# United States Tax Court

T.C. Memo. 2024-11

ESSEL EYEWEAR, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 10823-22.                    Filed January 31, 2024.

————————

*Joseph Y. Balisok*, for petitioner.

*Massimiliano Valerio* and *James P.A. Caligure*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for 2018 and 2019, the Internal Revenue Service (IRS or respondent) determined deficiencies of $46,846 and $23,794, respectively, and penalties of $9,369 and $4,759. The deficiencies stem from unreported gross receipts and the disallowance of claimed deductions. Respondent has filed a Motion for Summary Judgment under Rule 121,[1] contending that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law. We agree and accordingly will grant the Motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2]                                    *Background*

   The following facts are based on the parties' pleadings and respondent's Motion papers, including the Declarations and Exhibits attached thereto. *See* Rule 121(c). We also rely on facts deemed admitted by virtue of petitioner's failure to respond to requests for admissions. *See* Rule 90(f). Petitioner had its principal place of business in Brooklyn, New York, when its Petition was timely filed.

   During 2018 and 2019 petitioner engaged in the business of selling eyewear at wholesale. It filed timely returns for both years on Form 1120, U.S. Corporation Income Tax Return. The IRS selected these returns for examination and assigned the audit to Revenue Agent (RA) Karen Chen.

   To verify the gross receipts reported on these returns, RA Chen summonsed the bank records of petitioner and its sole shareholder. For 2018 she determined that an $11,000 business receipt belonging to petitioner had been deposited into the shareholder's account and was excluded improperly from petitioner's gross receipts. For 2019 she determined that petitioner's bank account had unexplained deposits of $25,894 that should have been included in its gross receipts. She provided her bank deposits analysis to petitioner and its representative. Neither presented any evidence that the $36,894 (or any portion thereof) derived from nontaxable sources or was otherwise excludable from petitioner's gross income.

   To verify petitioner's reported cost of goods sold (COGS) and business expense deductions, RA Chen requested substantiation from petitioner. Its representative supplied documents in several phases during 2021, and RA Chen revised her findings accordingly. She determined that petitioner had substantiated only a portion of its reported COGS, advertising expenses, and "other" deductions for 2018 and 2019 and that it had substantiated none of a $2,000 bad debt deduction claimed for 2019. On the other hand, she concluded that petitioner should be allowed an additional deduction of $6,500 for each year for rental expenses.

   On October 1, 2021, RA Chen prepared and forwarded to her manager for approval a draft 30-day letter setting forth her proposed adjustments. She included in this package a civil penalty approval form recommending that a 20% accuracy-related penalty be asserted for each year. Acting Group Manager (AGM) Nadezhda Khasin returned the

**[\*3]** package that same day, approving the assertion of 20% penalties for substantial understatements of income tax (or alternatively for negligence). *See* § 6662(a) and (b)(1) and (2). The form bears AGM Khasin's digital signature dated October 1, 2021.

RA Chen forwarded her draft report to petitioner and revised it after receiving additional information. On November 30, 2021, she finalized her examination report. After adjusting petitioner's gross receipts, COGS, and allowable deductions in accordance with her findings, she determined that petitioner's 2018 taxable income should be increased from $30,268 to $253,342, and that its 2019 taxable income should be increased from $20,293 to $133,600. These adjustments generated income tax deficiencies of $46,846 and $23,794:

| 2018 Return Item | As Reported | Adjustment | As Redetermined |
|---|---|---|---|
| Gross Receipts | $701,724 | $11,000 | $712,724 |
| Returns/Allowances | (6,983) | -0- | (6,983) |
| COGS | (419,427) | 150,421 | (269,006) |
| **Gross Profit** | **$275,314** | **$161,421** | **$436,735** |
| Salaries | (15,000) | -0- | (15,000) |
| Repairs | (13,986) | -0- | (13,986) |
| Taxes | (1,219) | -0- | (1,219) |
| Charitable Contributions | (3,363) | -0- | (3,363) |
| Rents | (12,000) | (6,500) | (18,500) |
| Advertising | (44,042) | 24,959 | (19,083) |
| Other Deductions | (155,436) | 43,194 | (112,242) |
| **Total Deductions** | **($245,046)** | **$61,653** | **($183,393)** |
| **Taxable Income** | **$30,268** | **$223,074** | **$253,342** |
| **Tax Liability** | **$6,356** | **$46,846** | **$53,202** |

**[*4]**

| 2019 Return Item | As Reported | Adjustment | As Redetermined |
|---|---|---|---|
| Gross Receipts | $770,798 | $25,894 | $796,692 |
| Returns/Allowances | (5,723) | -0- | (5,723) |
| COGS | (391,128) | 39,802 | (351,326) |
| **Gross Profit** | **$373,947** | **$65,696** | **$439,643** |
| Salaries | (19,500) | -0- | (19,500) |
| Repairs | (86,024) | -0- | (86,024) |
| Bad debts | (2,000) | 2,000 | 0 |
| Taxes | (1,492) | -0- | (1,492) |
| Charitable Contributions | (1,981) | -0- | (1,981) |
| Rents | (12,000) | (6,500) | (18,500) |
| Advertising | (44,047) | 25,047 | (19,000) |
| Other Deductions | (186,610) | 27,063 | (159,547) |
| **Total Deductions** | **($353,654)** | **$47,610** | **($306,044)** |
| **Taxable Income** | **$20,293** | **$113,307** | **$133,600** |
| **Tax Liability** | **$4,262** | **$23,794** | **$28,056** |

RA Chen sent her final report to petitioner and its representative but received no further response. On January 5, 2022, her manager closed the examination. On April 5, 2022, the IRS issued petitioner a notice of deficiency determining the tax deficiencies and penalties set forth *supra* page 1.

On May 9, 2022, petitioner timely petitioned this Court, assigning error to every determination in the notice of deficiency. Shortly after respondent filed his Answer, the case was referred to the IRS Independent Office of Appeals (Appeals) to consider whether the case could be

[*5] resolved without trial. In August 2022 the case was assigned to an Appeals officer (AO), who requested substantiation supporting petitioner's return position and the assignments of error in the Petition. Petitioner had supplied no relevant information to the AO as of January 2023, when this case was placed on a May trial calendar.

On February 13, 2023, respondent served on petitioner a First Request for Admissions. In 11 numbered paragraphs, respondent asked petitioner to admit that it had "no documents" showing that the IRS erred in adjusting its gross receipts, COGS, advertising expenses, bad debt deduction, and "other" deductions as set forth in the notice of deficiency. Respondent advised petitioner that "pursuant to Tax Court Rules 90(c) and 90(f), each matter in the foregoing requests will be deemed admitted, and conclusively established for purposes of this case, unless you serve a written answer or an objection to these requests within 30 days after the date these requests for admissions were served on you." Petitioner filed no response to the First Request for Admissions by the March 15 deadline or subsequently. The matters covered by that request are thus deemed admitted. *See* Rule 90(c).

On March 8, 2023, the case was continued from the May trial calendar upon a representation from petitioner's counsel that "[p]etitioner is actively working with IRS Office of Appeals . . . to settle the outstanding issues raised in the Petition." On June 8, 2023, the AO informed respondent's counsel that petitioner had supplied no substantiation or documentation of any kind during the Appeals process. Petitioner was sent a "last chance" letter, but it supplied nothing in response to that letter.

On July 6, 2023, the AO returned the case to respondent's counsel for trial preparation. On July 20, 2023, respondent served on petitioner's counsel a Second Request for Admissions. Respondent asked petitioner to admit that a civil penalty approval form, attached as Exhibit A to the Request, was a "true and genuine copy" of the civil penalty approval form signed by AGM Khasin on October 1, 2021. Respondent also requested that petitioner admit that AGM Khasin's approval was timely secured, that petitioner for 2018 and 2019 "is liable for the substantial understatement penalty . . . in the amounts determined in the statutory notice of deficiency," and that "[t]he adjustments and computations in the statutory notice of deficiency . . . are correct in all respects."

[*6]   The Second Request for Admissions (like the First) advised petitioner that "pursuant to Tax Court Rules 90(c) and 90(f), each matter in the foregoing requests will be deemed admitted, and conclusively established for purposes of this case, unless you serve a written answer or an objection to these requests within 30 days after the date these requests for admissions were served on you." Petitioner did not respond to the Second Request for Admissions by the August 19 deadline or subsequently. The matters covered therein are thus deemed admitted. *See* Rule 90(c).

On September 1, 2023, the Court placed this case on a January 22, 2024, New York, New York, trial calendar. On September 28, 2023, respondent filed a Motion for Summary Judgment, urging that the deficiencies and penalties set forth in the notice of deficiency should be sustained in full. We directed petitioner to respond to the Motion by October 30, 2023, warning that "under Tax Court Rule121(d), judgment may be entered against a party who fails to respond to a Motion for Summary Judgment." Petitioner did not respond to the Motion by that date or subsequently.

*Discussion*

I.   *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520.

Facts deemed admitted under Rule 90(c) are considered conclusively established and may be relied upon in deciding whether to grant a motion for summary judgment. *See Marshall v. Commissioner*, 85 T.C. 267, 272–73 (1985); *Morrison v. Commissioner*, 81 T.C. 644, 651–52 (1983); *Doncaster v. Commissioner*, 77 T.C. 334, 336 (1981). Where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or

**[\*7]** otherwise, showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

Because petitioner did not respond to the Motion for Summary Judgment, we could enter a decision against it for that reason alone. *See* Rule 121(d). We will nevertheless consider the Motion on its merits. Given the facts deemed admitted, we conclude that no material facts are in genuine dispute and that this case is appropriate for summary adjudication.

## II.   *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); *see Welch v. Helvering*, 290 U.S. 111, 115 (1933). In certain circumstances section 7491 may shift to the Commissioner the burden of proof on factual issues. But that section applies only if the taxpayer (among other things) "introduces credible evidence" and "has maintained all records required under this title." *See* § 7491(a)(1), (2)(B). Petitioner does not contend, and it could not plausibly contend, that it met these requirements.

## III.   *Gross Income*

"[G]ross income means all income from whatever source derived," including income derived from business. § 61(a); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429–31 (1955). In cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer with the income-producing activity, *see Llorente v. Commissioner*, 649 F.2d 152, 156 (2d Cir. 1981), *aff'g in part, rev'g and remanding in part* 74 T.C. 260 (1980), or demonstrate that the taxpayer actually received income, *Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982). "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous." *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)); *see Texasgulf, Inc., & Subs. v. Commissioner*, 172 F.3d 209, 214 (2d Cir. 1999), *aff'g* 107 T.C. 51 (1996).

The Commissioner reconstructed petitioner's income using the bank deposits method. Taxpayers must maintain books and records sufficient to establish their income and expenses. §§ 6001, 446(b); *Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989); Treas. Reg. § 1.6001-1(a).

[*8] When a taxpayer fails to do so, the Commissioner may reconstruct its income by examining its bank deposits. *See Estate of Hague v. Commissioner*, 132 F.2d 775 (2d Cir. 1943), *aff'g* 45 B.T.A. 104 (1941); *DiLeo v. Commissioner*, 96 T.C. 858, 881 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). Bank deposits are prima facie evidence of income, and the Commissioner need not show a likely source of the revenue. *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). We presume that all money deposited into a taxpayer's account is taxable unless the taxpayer shows that particular deposits are nontaxable or were previously reported as income. *DiLeo*, 96 T.C. at 868; *Brodsky v. Commissioner*, T.C. Memo. 2001-240, 82 T.C.M. (CCH) 505, 530.

RA Chen summonsed the bank records of petitioner and its sole shareholder. Analyzing the data in those accounts, she prepared and supplied to petitioner a bank deposits analysis—complete with her supporting worksheets—showing that petitioner had additional gross receipts of $11,000 for 2018 and $25,894 for 2019. Petitioner provided no evidence that these deposits reflected nontaxable items or that her analysis was incorrect in any respect. We accordingly find that respondent's implementation of the bank deposits method was reasonable and provided a sufficient evidentiary foundation connecting petitioner with the unreported income. *See Petzoldt*, 92 T.C. at 687 (noting that the IRS's reconstruction of a taxpayer's income "need only be reasonable in light of all surrounding facts and circumstances").

In any event, petitioner failed to respond to both Requests for Admissions. Petitioner is thus deemed to have admitted that the adjustments in the notice of deficiency "are correct in all respects" and that "it does not have any documents showing that respondent erred" in calculating its gross income. *See* Rule 90(c). These deemed admissions alone suffice to establish that no genuine dispute exists as to the issue of unreported income. *See Marshall*, 85 T.C. at 272–73. We accordingly conclude that respondent's determinations of unreported gross receipts for 2018 and 2019, as set forth in the notice of deficiency, are correct, and those determinations are sustained. *See Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97; *Powerstein v. Commissioner*, T.C. Memo. 2011-271, 102 T.C.M. (CCH) 497, 506.

IV.     *Cost of Goods Sold and Deductions*

Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving that claimed business expenses were

[*9] actually incurred and were "ordinary and necessary." § 162(a); Rule 142(a); *see INDOPCO Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). Taxpayers also bear the burden of substantiating the amounts of their deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. *See* § 6001; Treas. Reg. § 1.6001-1(a).

"Costs of goods sold" is an offset subtracted from gross receipts in determining gross income. Treas. Reg. § 1.61-3(a). Technically speaking, COGS is not a "deduction." *See Metra Chem Corp. v. Commissioner*, 88 T.C. 654, 661 (1987). However, any amount claimed as COGS also must be substantiated, and taxpayers are required to maintain records sufficient for this purpose. § 6001; *Nunn v. Commissioner*, T.C. Memo. 2002-250, 84 T.C.M. (CCH) 403, 408; Treas. Reg. § 1.6001-1(a).

RA Chen concluded, on the basis of documents supplied during the examination, that petitioner had failed to substantiate a portion of its reported COGs, advertising expenses, and other deductions for 2018 and 2019 and had substantiated none of the bad debt deduction reported for 2019. After receiving RA Chen's final examination report, petitioner provided no evidence to her, to the AO, or to respondent's counsel to substantiate the amounts disallowed. Because petitioner failed to meet its burden of substantiation, we can sustain respondent's disallowance of its claimed deductions and expenses on this ground alone.[2]

In any event, petitioner failed to respond to respondent's Requests for Admissions and is thus deemed to have admitted that the adjustments in the notice of deficiency are "correct in all respects" and that no documents exist showing that respondent erred in disallowing the amounts of these items. *See* Rule 90(c). Petitioner's deemed admissions suffice to establish that no genuine dispute exists regarding the disallowed COGS and deductions for 2018 and 2019 and the disallowed bad debt expense for 2019. *See Marshall*, 85 T.C. at 272–73. We accordingly conclude that respondent's determinations on these points, as set forth

---

[2] If a taxpayer establishes that deductible expenses were incurred but fails to establish the precise amounts, we may estimate allowable amounts in appropriate circumstances. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). However, there must be evidence in the record that provides a rational basis for such an estimate. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). We are not obligated to make an estimate under the *Cohan* rule where there is insufficient record evidence to enable a rational estimate. *See Lerch v. Commissioner*, 877 F.2d 624, 627–29 (7th Cir. 1989) (refusing to apply the *Cohan* rule where the taxpayer failed to present evidence to support the claimed deduction), *aff'g* T.C. Memo. 1987-295.

**[*10]** in the notice of deficiency, are correct, and those determinations are sustained. *See Hardy v. Commissioner*, 181 F.3d at 1004; *Powerstein*, 102 T.C.M. (CCH) at 506.

V.    *Accuracy-Related Penalties*

The Code imposes a 20% penalty upon the portion of any underpayment attributable to any "substantial understatement of income tax." *See* § 6662(a), (b)(2).  For a subchapter C corporation such as petitioner, a substantial understatement of income tax is an understatement that exceeds the lesser of 10% of the tax required to be shown on the return (or, if greater, $10,000) or $10 million.  § 6662(d)(1)(B).  The Commissioner has no burden of production with respect to the penalty where the taxpayer is a corporation. *NT, Inc. v. Commissioner*, 126 T.C. 191, 195 (2006) (noting that section 7491(c), which places the burden of production with respect to penalties on the Commissioner, does not apply to corporations, only "individual[s]").

Petitioner reported tax liabilities of $6,356 and $4,262, respectively, on its returns for 2018 and 2019.  The notice of deficiency—the adjustments in which we have sustained—determined tax liabilities of $53,202 and $28,056, respectively.   This leaves understatements of $46,846 for 2018 ($53,202 − $6,356) and $23,794 for 2019 ($28,056 − $4,262).  Each year's understatement of income tax exceeded the 10% threshold and was thus "substantial."

No penalty is imposed under section 6662 with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to [it]."  § 6664(c)(1).  Petitioner has supplied no evidence to establish reasonable cause or good faith.  Quite the contrary, by failing to respond to the Second Request for Admissions, petitioner is deemed to have admitted that it "is liable for the substantial understatement penalty . . . in the amounts determined in the statutory notice of deficiency." We will accordingly sustain the penalties as determined by the Commissioner.

To reflect the foregoing,

*An appropriate order and decision will be entered for respondent.*